Fremont-Smith, J.
INTRODUCTION
Plaintiff Wilson Lee (“Lee”) brings this action, alleging negligence, defamation, and contribution against the Sing Tao Daily Newspaper (“newspaper”) and its reporter Klysler Yen (“Yen”), contending that a quotation attributed to him was false.
The action appears before this Court on the defendants’ motion for summary judgment pursuant to Mass.R.Civ.P. 56. After a hearing, and for the reasons set forth below, the defendants’ motion for summary judgment is ALLOWED and judgment shall enter for the defendants.
STATEMENT OF RELEVANT FACTS
This unusual case arises out of another Superior Court action filed against Wilson Lee by two plaintiffs whom Lee is alleged to have defamed. See Chan v. Lee, Civ. No. 97-4510 (Suffolk Superior Court). For purposes of this motion, the facts are recited in a light most favorable to the plaintiff. See Willits v. Roman Catholic Archbishop of Boston, 411 Mass. 202, 203 (1991).
On the evening of November 19, 1996, Lee attended a meeting of the Chinese Consolidated Benevolent Association of New England (“CCBA”), in which he holds the office of President. The CCBA is a non-profit umbrella organization located in Boston’s Chinatown section. The organization has been in existence for over 100 years and represents over forty business, family, civic, and social service providers in the Chinese community. The CCBA holds bi-monthly meetings where delegates, each of whom represents different community interests, get together and hold discussions with respect to how to improve the quality of life within the Chinese community. Members who represent community organizations are appointed as delegates to the CCBA by their respective organizations while members who represent businesses are elected through contested elections. The President and other officers of the organization are then elected by the members. The CCBA meetings are open to anyone in the community and are often covered by the media.
The November 19 meeting was no exception with respect to media coverage, as the Sing Tao Daily Newspaper sent reporter Klysler Yen to cover the event. At the meeting, plaintiff Lee took the floor and made a speech about an investment group (the Chinese Limited Partneship), in which CCBA allegedly owned a ten percent stock interest. In connection with this investment group, Lee allegedly stated that Paul Chan (“Chan”) and Davis Woo (‘Woo”), members of the local Chinese business community, earned annual salaries of $100,000 and $50,000, respectively, from the CCBA over the course of five years.[1] Lee noted that he had documents concerning the CCBA’s investment in the Partnership, and he asked that the documents (which were in English) be translated to Chinese and made public.
The revelation about Chan’s and Woo’s salaries allegedly shocked the delegates. However, the CCBA’s English Secretary explained to the delegates that the documents referred to by Lee were too long, and unless he was paid additional compensation, he would not translate them. A heated dispute occurred among the delegates, first with respect to how to translate the documents, and second with respect to how the CCBA could have disbursed such high salaries to Chan and Woo.
Yen reported on the meeting for the newspaper, writing his story in Chinese, and faxed it to New York, where the newspaper is published. However, the Chinese character for “10" and the Chinese character for ”60" are similar, and when the fax was received in New York, the publisher quoted Lee as saying that the CCBA owned a “60 % stock interest” in the Chinese Limited Partnership when, in fact, Lee had stated that the CCBA owned a “10 % stock interest.” The newspaper account of the meeting was published two days later on November 21, 1996.[2]
Sometime after publication, Chan and Woo, who were not present at the CCBA meeting, attended a dinner at the China Pearl Restaurant. Throughout the dinner, they were approached by numerous members of the Chinese business community, who were concerned about the fact that the CCBA (a community organization) or a partnership in which it held a substantial ownership interest, was paying unreasonably high salaries to these two men.[3] Chan and Woo denied the allegations made at the meeting and in the newspaper, and subsequently filed a defamation lawsuit against Lee, see Chan v. Lee, Civ. No. 97-4510 (Suffolk Superior Court), on the basis of Lee’s oral statements at the CCBA meeting. The newspaper, however, was not made a party to the lawsuit.
Subsequent to the filing of the defamation lawsuit, Lee filed the instant suit against the newspaper and Yen, alleging that the story published in the newspaper was false and defamatory, and that as a result of the lawsuit filed against him by Chan and Woo, his reputation in the Chinese community had been injured.
*184 DISCUSSION
Summary Judgment Standard
This Court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Nashua Corp. v. First State Insurance Co., 420 Mass. 196, 202 (1995); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at triad. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson, supra at 17. In deciding a motion for summary judgment, the Court may consider pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Community National Bank, supra at 553. In making the determination whether a genuine issue of material fact exists, the Court must draw all inferences from the underlying facts in the light most favorable to the party opposing the motion. Willits v. Roman Catholic Archbishop of Boston, 411 Mass. 202, 203 (1991). The Supreme Judicial Court has noted that summary judgment is appropriate in defamation cases, King v. The Boston Globe Newspaper Co., 400 Mass. 705, 708 (1987), and summary judgment is proper when resolution of the case depends solely on answers to questions of law. Gross v. Prudential Insurance Company of America, Inc., 48 Mass.App.Ct. 115, 118 (1999).
In the case at bar, the Court concludes that on this record and on these facts, Lee will be unable to prove that the alleged defamatory statements were “of and concerning” himself. Further, as a limited issue public figure in his role as President of the CCBA, Lee will be unable to prove that the defendants acted with actual malice in the publication of the aforementioned newspaper article. Because proof of the above are “essential elements” of Lee’s claim, it allows summary judgment for the defendants.
The “Of and Concerning” Requirement
The defendants first contend that summary judgment is appropriate in the instant case because the allegedly defamatory words published by the defendant were not “of and concerning” the plaintiff, but were about Chan and Woo. It is a fundamental principle of defamation law that the plaintiff must show, inter alia, that the allegedly defamatory words were of and concerning the plaintiff. New England TractorTrailer Training of Connecticut v. Globe Newspaper Co., 395 Mass. 471, 474 (1985) (grant of summary judgment to defendant reversed where affidavits presented several genuine issues of material fact whether newspaper articles were of and concerning plaintiff). The plaintiff may establish that the defendant’s words were of and concerning the plaintiff by proving either: (1) that the defendant intended the defamatory words to refer to the plaintiff and that they were so understood; or (2) that persons could reasonably interpret the defendant’s defamatory words to refer to the plaintiff and that the defendant was negligent in publishing them in such a way that they could be so understood. Id. at 483. This test is an objective one, where a court inquires into a reasonable recipient’s understanding of the words rather than the speaker’s intent. Id. at 480.
Although the words published in the Sing Tao Daily Newspaper undisputedly purported to quote Lee, the two men who were allegedly defamed by Lee (Chan and Woo) are not parties to this action. Rather, in this case, although the speaker (Lee) alleges that the newspaper’s misquote of his comments resulted in injury to his reputation within the community and exposed him to hatred, ridicule, and contempt, see Brauer v. The Globe Newspaper Co., 351 Mass. 53, 55-56 (1966), the defamatory allegations attributed to Lee were “of and concerning” Chan and Woo. The published statement that the CCBA had invested in a partnership resulting in payments of $750,000 to Chan and Woo could reasonably be seen to have held Chan and Woo up to scorn, ridicule, and contempt in the community, see Brauer, supra, but not to have held Lee (whom the article accused of no wrongdoing) up to scorn, ridicule, and contempt.[4] Accordingly, the complaint fails to state a cause of action for defamation against the newspaper and its reporter, Yen.
Limited Issue Public Figure
The question remains, however, whether the defendants can be liable in negligence for misquoting Lee in a way which, even if not defamatory to Lee, ultimately injured Lee’s reputation because it negligently attributed to him defamatory statements as to Chan and Woo. Were this an ordinary negligence case, summary judgment might be inappropriate because of a jury’s “unique competence in applying the reasonable man standard.” Appleby v. Daily Hampshire Gazette, 395 Mass. 32, 37 (1985). Nevertheless, where First Amendment concerns are involved, courts have not hesitated to grant summary judgment for defendants in actions in which there may have been a negligent, non-malicious publication of erroneous facts about a limited issue public figure, see, e.g., ELM Medical Laboratories, Inc. v. RKO General, Inc., 403 Mass. 779 (1989) (summary judgment award for defendant affirmed where television news station made non-malicious errors in broadcast about limited issue public figure *185 plaintiff), Cefalu v. Globe Newspaper Co., 8 Mass.App.Ct. 71 (1979) (distinction between malicious and negligent mistatements discussed), because allowing a trial to take place in such a case “would put an unjustified and serious damper on freedom of expression, Appleby, supra at 37, and would seriously limit the ’’profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." New England Tractor-Trailer, supra at 476, citing New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964). Thus, even were the defendants’ defamatory published comments capable of being construed as having been “of and concerning” Lee, the plaintiff would still have to demonstrate more than negligence on the part of the publisher if Lee is a public figure. Jones v. Taibbi, 400 Mass. 786, 797 (1987). Public officials and public figures may recover for publication of a defamatory falsehood only upon proof of actual malice, New York Times Co. v. Sullivan, 376 U.S. 254, 283 (1964), whereas private persons may recover upon proof of a merely negligent publication of a defamatory falsehood. Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 858 (1975). Where, as here, the relevant facts in the case are not in dispute, it is for the judge to determine whether the plaintiff is a public or private figure. See Shaari v. Harvard Student Agencies, Inc., 427 Mass. 129, 133 n.6 (1998); ELM Medical Laboratory, Inc., supra at 785-86.
Lee contends that he is a private individual for purposes of this action while the defendants contend that he is a public figure, albeit a limited one. Upon review of the summary judgment record, this Court concludes that Lee is a limited issue public figure who must prove actual malice to recover for the publication of a defamatory falsehood.
An individual may achieve public figure status if he “voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues.” ELM Medical Laboratory, Inc., supra at 785.[5] A “public controversy” is “a dispute in which the outcome affects the general public or some segment of it in an appreciable way.” Id. at 786. In the instant case, because Lee spoke to only the CCBA delegates, and the issue with respect to Chan’s and Woo’s salaries was reported to and affected only the local Chinese community, Lee’s status as a public figure is determined in relation to the Boston Chinese community, and not the general public at large. See Materia v. Huff, 394 Mass. 328, 331 (1985) (where letter circulated only among members of local union, plaintiff s status as public figure determined in relation to those members rather than community at large). On this record, it is this Court’s determination that the issue on which Lee spoke at the CCBA meeting was a “public controversy.” The CCBA is a non-profit community organization which attempts to improve the quality of life of citizens in Boston’s Chinatown neighborhood. In addition, the CCBA represents over forty business and service providers, and members must either be elected or appointed as delegates. The fact that the CCBA — as a non-profit — allegedly paid two men salaries over five years, amounting to $750,000, and that these payments were unknown to many of the CCBA delegates, caused this controversy to become a public one when issues arose with respect to the ownership interests and monies paid by the organization.
As noted above, a limited issue public figure is one who voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. ELM Medical Laboratory, Inc., supra at 785. Further, a limited issue public figure is one who has achieved “special prominence in the resolution of public questions.” Jones v. Taibbi, supra at 798, citing Gertz v. Robert Welch, Inc., 418 U.S. 323, 351 (1974).In determining Lee’s status as a limited issue public figure, this Court looks to the nature and extent of an individual’s participation in the particular controversy giving rise to the defamation. Jones v. Taibbi, supra at 798. In the instant case, it is undisputed that Lee voluntarily injected himself into the controversy. Lee, as President of the CCBA, discovered documents that he believed showed financial improprieties on the part of the CCBA, subsequently took the floor at one of the meetings, described what he believed to be the CCBA’s wrongdoing, and suggested that the aforementioned documents be translated and made public. In addition, Lee sought and was elected to the office of CCBA President. He was elected twice to the CCBA: once as a delegate, and a second time by the delegates as President. As President, he presided over the bi-monthly meetings, and at the November 19, 1996 meeting, he voluntarily spoke on a subject as to which only he possessed the relevant documents. It was Lee who sought to make the documents public, and it was Lee whom Yen and the newspaper quoted after the conclusion of the meeting.
Thus, Lee voluntarily injected himself into the public controversy by: (1) making statements bearing on the issue of the CCBA’s finances; (2) suggesting certain papers be translated such that the entire community would have access to them; and (3) seeking to influence opinion within the CCBA and the Chinese community with respect to the CCBA’s finances and investments. In addition, as noted by the Supreme Court in Gertz, Lee had “access to the channels of effective communication” as evidenced by his election within the community to the CCBA and his election by his peers and associates as CCBA President. Gertz, supra at 344. Also, by publicly speaking on the issue of CCBA finances in his role as President, Lee invited public scrutiny. See Pendleton v. City of Haverhill, 156 F.3d 57, 69 (1st Cir. 1998). Thus, to recover for defamation, as a public figure, Lee must prove “actual malice." Stone v. Essex County Newspapers, Inc., supra at 867.
Actual malice is proved by a showing that the defamatory falsehood was published with knowledge that it
*186 was false or with reckless disregard of whether it was false. Id. Although the existence of actual malice raises a state-of-mind issue, summary judgment is still an appropriate method for resolving claims when the plaintiff has failed to present any evidence from which the Court may draw an inference of actual malice. ELM Medical Laboratory, Inc., supra at 786. At best, Lee can prove only negligence, in that the copy of Yen’s article that was faxed to New York for publication was incorrectly transcribed. On this record and on these facts, there is no indication that the Sing Tao Daily Newspaper or Yen wrote or published the article with knowledge that it was false, or with reckless disregard of whether it was false.[6] Thus, having stepped into the fray, commenting on an organization in which he served as President, and publicly questioning the finances, investments, and salaries received by two other individuals, Lee assumed the risk that the ensuing discourse might contain errors of fact — errors for which the speakers, in the absence of a showing of actual malice, could not be held liable. See Pendleton, supra at 71.
The Supreme Judicial Court’s decision in Materia v. Huff, 394 Mass. 328 (1985), is analogous and instructive. In Materia, plaintiff was the secretary of a local union and a trustee of the union’s health and welfare fund. The defendant Huff ran against plaintiff Materia for election as secretary of the union. A number of days prior to the election, Huff circulated among the union members a letter, which accused Materia of self-dealing, conflict of interest, misappropriation of union funds, and gross misconduct in office. The letter stated that the only ones profiting from the scholarship fund were the administrators, one of whom was the plaintiff. Plaintiff sued Huff, alleging that the letter libeled him, and a jury agreed awarding Materia $ 15,000. The Supreme Judicial Court, in reversing the jury award, held that Materia was a limited issue public figure because he voluntarily thrust himself into the controversy by campaigning for reelection as a union official, Materia v. Huff, supra at 331, and as such could not prove “actual malice.”
Similarly, in the case at bar, Lee voluntarily thrust himself into the controversy by speaking about CCBA’s finances in his role as President of the organization, and by suggesting that certain financial documents should be made public such that the entire Chinese community would have access to them. Because Lee can prove, at best, negligence on the part of the newspaper, judgment for the defendants is appropriate in the instant case as well.
Although, at the hearing, the plaintiff agreed to dismiss his count for contribution without prejudice, it is clear that the only basis for a contribution claim could be that the defendants were joint tortfeasers with Lee. However, as there is no legal basis on the facts for any tort liability on the part of the defendants in either defamation or negligence where the plaintiff is a limited issue public figure, the Court will dismiss both counts of the complaint with prejudice.
ORDER
It is therefore ORDERED that the defendants’ motion for summary judgment is ALLOWED and that judgment shall enter for the defendants.

 There is no dispute that Chan and Woo were paid annual salaries of $100,000 and $50,000, respectively. There is a dispute, however, as to whether the salaries were actually paid by the CCBA, or whether the salaries were paid by the developer of the project in which the CCBA held an interest. Lee testified at his deposition that Chan and Woo received their salaries from a developer of the project in which the CCBA held a ten percent stock interest, and not directly from the CCBA. In any event, this dispute of fact is not considered by the Court to be critical to its decision on the summary judgment motion now before it.

 The final paragraph of the news article, translated from Chinese to English, states:
Additionally, the Chairman (Lee) reported (to the Council) an “investment” matter about ten years ago, that CCBA made an investment owning 60% of stock interest in a certain company, and (he) said (the investment) was shown by a large stack of documents. The annual salary of Chan Gar Wah of that company was $100,000, at a total of $500,000 for five years. The annual sadary of Woo Guo San was $50,000, his five years’ salary have taken $250,000. Furthermore, the investment document bore the signatures of Mr. Woo and Lee Hung Wee. The attendees were shocked as a group. Mr. Lee then asked at the (meeting) site that he hope CCBA to have the documents promptly translated to Chinese and made public. However, Mr. Chow Shiu Kao, the English Secretary, said that the documents were too long and, unless additional compensation was paid (to him), the translation could not be done within a month. A heated dispute ensued regarding how to have the documents translated, and how CCBA could have disbursed $750,000 in five years? (The dispute) caused many Council members dumbfounded, because almost a majority of them were not serving as members of the Council ten years ago. That included the Chairman himself.

 There is a dispute in the record as to who paid Chan and Woo their salaries. See note 1, supra. However, because the newspaper reported that the CCBA owned a sixty percent interest in the Partnership, and paid Chan’s and Woo’s salaries, it is reasonable to infer that the businessmen who approached Chan and Woo at the restaurant were concerned in part about the reasonableness of the CCBA’s alleged sixty percent ownership interest in the Partnership, in view of the CCBA’s being a non-profit community organization, as well as the reasonableness of the salaries paid to Chan and Woo.

 Lee, in his deposition, attributes the damage to his reputation to have resulted from being sued by Chan and Woo for defamation, but not to anything in the article which he alleges was defamatory about him personally.

 Lee is not a public figure for all purposes. The fame required for an individual to be a public figure for all purposes, as opposed to a limited propose public figure, is great. A “public figure for all purposes” must be a household name on a national scale. See Bowman v. Heller, 420 Mass 517, 522 (1995).

 Indeed, in further support that publication of the article was done with no malicious intent, the Sing Tao Daily Newspaper offered to publish the following correction: “In the Boston edition of the Sing Tao Daily Newspaper of November 21, 1996, the Sing Tao Daily Newspaper erroneously reported through a typographical error that Wilson Lee stated at the CCBA meeting of November 19, 1996 that CCBA made an investment of 60% stock interest in a certain company. The correction is that Wilson Lee stated CCBA made an investment of 10%.” Lee, however, found this proposal unacceptable and rejected it.