Greco, PJ.
The trial court allowed the Mass. R. Civ. E, Rule 12(b) (6), motion to dismiss for failure to state a claim upon which relief can be granted filed by the defendant, Erin Decker (“Decker”). The plaintiff, Zaheer A Samee (“Samee”), has appealed. The Supreme Judicial Court has recently summarized the standard of review for such a motion in Golchin v. Liberty Mut. Ins. Co., 460 Mass. 222, 223 (2011) as follows:
In reviewing the sufficiency of a complaint under rule 12(b) (6), “[w]e take as true ‘the allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiffs favor. ...”’ “What is required at the pleading stage are factual ‘allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief. ...” “Factual allegations must be enough to raise a right to relief above the speculative level... [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) ...” (citations omitted).
Samee’s complaint contained counts alleging defamation, false imprisonment, and violations of the Massachusetts Civil Rights Act, G.L.c. 12, §§11H and 111. As to all three counts, he alleged the following. Samee is an attorney. A client and friend of his, Carly Dwyer (“Dwyer”), shared a two-bedroom apartment with Decker. Four months into their lease, Decker moved out, subletting her room to two others, but leaving behind in the apartment some furniture and other personal belongings. In May of 2010, the lease was amended to provide that it would end on July 31, 2010, and that the sublessees were required to vacate the apartment by May 31, 2010. Sometime in June, Dwyer retained Samee “as her attorney in connection with matters related to the apartment” with “explicit instructions not to give the keys to Decker who was no longer authorized to live in the apartment.” Subsequently, Decker asked Samee to meet her at the apartment on June 26,2010, and to give her the keys to the apartment so that she could retrieve the items she had left there. Samee agreed only to meet her. On June 25th, Samee informed Decker that he *210 would not give her the keys, but that he would let her into the apartment and remain there until “she removed her belong [ing]s.” The parties exchanged a series of text messages in the afternoon of June 26th. Decker wanted to meet Samee at the apartment at 9:00 P.M.; Samee wanted an assurance that she was ready to move her “stuff’ out completely. Samee reiterated that he was not giving her the keys.
Samee alleged that he arrived at the apartment at 9:15 P.M.; Decker was waiting there along with two Cambridge police officers. The officers “demanded” that Samee give the keys to Decker. Samee tried to no avail to explain to the police that Decker had no right to have the keys, that he had not committed any crime, that this was a civil dispute between his client and Decker, that he was willing to let Decker into the apartment for about three hours to pack up her belongings, and that Decker could come back if she needed more time. “The police officers, however, continued to demand that Samee hand over the keys, which Samee refused to do.” Believing that the matter could not be resolved, Samee told the police he was leaving. When he started to leave on his motorcycle, the police prevented him from doing so, and called a sergeant to come to the scene. When he arrived, Samee pleaded his case to him. After speaking to Decker, the sergeant showed Samee a copy of the September, 2009 lease “with the names of... Dwyer and Decker on it, and demanded that Samee surrender the key to the apartment.” Samee responded that the lease had been amended and that Dwyer was the only authorized tenant. ‘Whereupon, the ... sergeant became loud, verbally aggressive, and directed the other two... officers to take the keys from Samee. The... officers then pushed and shoved Samee, slammed him against the police car, and forcibly took Samee’s keys.” The police gave the apartment key to Decker and returned the others to Samee. Samee was not charged with a crime, and he left the area. Samee alleged that during this whole episode, he was “completely civil and respectful to all involved ... [and] did not physically resist the police officers’ unjust aggression.”
As to the defamation count, Samee alleged that “[biased on the information available to [him] and reasonable belief, Decker made false and defamatory statements to ... [the police] regarding [him], including but not limited to, statements alleging or implying criminal attempts or actions” by him. These statements caused the police to intimidate and threaten him and “unjustifiably confine him against his will.” As to the false imprisonment count, Samee alleged that Decker’s actions “caused Samee to be detained, confined, and seized against his will without justification.” In his complaint count pursuant to the Civil Rights Act, Samee alleged that Decker “interfered” with his rights under the Fourth Amendment of the United States Constitution and art. 14 of the Declaration of Rights of the Massachusetts Constitution “by calling upon and invoking the aid of the police for the purpose of intimidating, threatening, and coercing [him] to give up possessions which he lawfully held.” As to all the counts, Samee alleged that he suffered “actual harm including interference with [his] rights, mental anguish, anger, fear, humiliation, shame, and damage to reputation.”
1. Defamation. “It is a fundamental principle of the law of defamation that a plaintiff must show, inter alia, that the allegedly defamatory words published by a defendant were of and concerning the plaintiff.” New England Tractor-Trailer Training of Conn., Inc. v. Globe Newspaper Co., 395 Mass. 471, 474 (1985). “ [E]xtrinsic facts tending to show that the words could be so interpreted” may be considered. Id. at 480. *211 “A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.” RESTATEMENT (SECOND) OF TORTS §559 (1977), quoted in Ravnikar v. Bogojavlensky, 438 Mass. 627, 630 (2003). In the context of this case, what is even more fundamental is that Samee has not identified those words allegedly spoken by Decker. One might guess that Samee believed that Decker may have exaggerated or even misrepresented her rights under the lease. However, guesswork and raw speculation are not sufficient to avoid dismissal of the defamation count.
2. False Imprisonment. “[F]alse imprisonment requires unlawful confinement by force or threat.” Ortiz v. County of Hampden, 16 Mass. App. Ct. 138, 140 (1983). Moreover, “[a] person may be liable for false imprisonment not only when the person’s own acts directly impose a restraint upon the liberty of another but also when that person, by providing false information, causes such restraint to be imposed.” Sarvis v. Boston Safe Deposit & Trust Co., 47 Mass. App. Ct. 86, 97-98 (1999). As with his defamation claim, Samee’s complaint count for false imprisonment is also devoid of specifics. Samee alleges only that Decker showed the police a copy of the lease. There is no allegation of what else, if anything, Decker told the police. It would appear from the complaint that after speaking with the parties, the police did not arrest, or take any aggressive action toward, Samee, but decided only that Decker should be allowed to enter the apartment. Any alleged aggressive actions by the police were the result of Samee’s reaction to that decision, not the acts of Decker.
3. Civil Rights Violation. To establish a claim under the Massachusetts Civil Rights Act, a plaintiff “must prove that (1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by ‘threats, intimidation or coercion.’” Bally v. Northeastern Univ., 403 Mass. 713, 717 (1989). Samee specifically alleged that Decker interfered with his rights against unreasonable searches and seizures. As with the defamation claim, however, Samee did not state in his complaint any threats or acts of intimidation or coercion by Decker. It was alleged only that the police took the key to the apartment from Samee and gave it to Decker; nothing was alleged concerning what Decker did.
All three counts thus suffer from the same deficiency — the complete absence of facts from which it could even be inferred that these were viable claims, as opposed to allegations of dubious credibility. Samee has failed to “sketch[] the bare silhouette of a cause of action.” Coolidge Bank & Trust Co. v. First Ipswich Co., 9 Mass. App. Ct. 369, 371 (1980). The judgment of dismissal must be affirmed.
Finally, Samee alleges error in the trial court’s imposition of Mass. R. Civ. R, Rule 11 (a), sanctions against him. Decker filed a Rule 11 (a) motion for attorney’s fees and costs in the amount of $3,232.50. Without making any findings, the trial judge allowed that motion in the amount of $2,500.00. In imposing sanctions under Rule 11, a judge must determine whether “an attorney has failed to show a subjective good faith belief that the pleading was supported in both fact and law” (emphasis supplied) . Van Christo Advertising, Inc. v. M/A-COM/LCS, 426 Mass. 410, 416 (1998). In the absence of any findings, there is nothing in the record to support a determination by the trial court of Samee’s lack of a “subjective good faith” belief in the valid *212 ity of his complaint allegations. Therefore, a reconsideration of Decker’s Rule 11(a) motion is in order.
Accordingly, the judgment of dismissal of the plaintiffs complaint is affirmed. The allowance of the defendant’s Rule 11(a) motion for sanctions is vacated, and the motion is returned to the trial court for reconsideration and for written findings upon any allowance of that motion.
So ordered.