MITCHELL MABARDI *vs.* BOSTON HERALD-TRAVELER
CORPORATION.

Suffolk.   April 6, 1964. — May 1, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & REARDON, JJ.

*Libel and Slander.*

Display on the front page of a newspaper of the name and photograph
of an attorney, together with the names and photographs of two other
men, immediately below the headline "Settlement upped $2,000 — $400
Kickback Told," which covered the top of the page and pertained to
criminal activities in connection with highway land takings discussed at
length in the lead article on that page and on a following page, in the
circumstances was capable of being found to be defamatory of the
attorney where the article identified one of the other men as a State
negotiator recently convicted of raising a land settlement by $2,000 in
return for the $400 "kickback" and related a few harmless facts about
the other of the two men but made no reference to the attorney and
contained two paragraphs referring to an unidentified attorney who
had solicited cases of persons whose property had been taken.

TORT.   Writ in the Superior Court dated June 20, 1962.
The action was heard by *Lappin,* J., on demurrer.
*James N. Gabriel* (*Max Binder* with him) for the plaintiff.
*Robert T. Capeless* for the defendant.

REARDON, J.   In this action of tort for libel against the
publisher of a newspaper, a demurrer was sustained to the
plaintiff's second amended declaration.   Assigned as the
ground of the demurrer was that no cause of action was
stated in the declaration.   The plaintiff has appealed.

The following facts are alleged.   For some time prior to
March 9, 1962, the defendant's newspaper, the Boston Traveler, in company with other Greater Boston newspapers,
had been publishing as "headline and front page material"
daily accounts of hearings held before a Congressional com-

mittee known as the Blatnik Committee. This committee was investigating fraudulent and criminal manipulations of payments made by the Federal government and this Commonwealth for land taken for the Federal highway program. In addition, the Traveler and other newspapers in the Greater Boston area had been publishing in similar fashion accounts involving "several attorneys and laymen" who had been convicted following their appearances before the committee. The plaintiff, a Boston attorney, upon request of the committee, appeared before it on March 9, 1962, to testify "as to how he had refused to take part in . . . alleged frauds and criminal activity" and he "received the thanks of the committee chairman for his help and assistance." On the same day, in the "Late Final" edition the Traveler's lead story was an account of that day's testimony before the Blatnik Committee in Washington. The headline, which covered the top of the front page, read in two lines: "Settlement Upped $2,000 — $400 Kickback Told." Immediately below the headline and toward the center of the page were three separate and properly labeled photographs representing, from left to right, one Joseph I. Mirkin, one Arthur P. Wilcox, and the plaintiff. The photographs were connected to the headline and to the article at their right. The article, a lengthy one mentioning over a dozen people by name, occupied half a column on page one and, in three columns, about a quarter of the space on page three. The story identified Mirkin as a State negotiator who had been recently convicted of raising a land taking settlement by $2,000 in return for the $400 "kickback." Wilcox, about whom the article said nothing harmful, was identified as current president of the National Association of Real Estate Boards and a former long time member of the review board of the Massachusetts Department of Public Works, who was due to testify before the committee. No reference to the plaintiff was made during the course of the article, although there were two paragraphs of reference therein to an unidentified lawyer who had solicited cases of persons whose property had been taken.

The plaintiff further alleges that the "publication of . . . [his] photograph combined with . . . [the] headline, combined with the photograph of a well publicized . . . convicted individual, combined with the failure of the defendant to explain the plaintiff's picture in . . . [these] surroundings, combined with the aroused and inflamed attitude of the newspaper buyers, and combined with the defendant's knowledge of . . . [that attitude] was a false and malicious libel of the plaintiff insinuating that . . . [he] had taken part in the criminal and fraudulent acts being investigated . . . ."

We have the problem of applying well settled law to the facts alleged. See *Anthony* v. *Barss,* 346 Mass. 401, 402. "It is settled that a demurrer to a declaration in libel cannot be sustained unless the words are not reasonably capable of any defamatory meaning." *Tobin* v. *Boston Herald-Traveler Corp.* 324 Mass. 478, 487. "The test is whether, in the circumstances, the writing discredits the plaintiff in the minds of any considerable and respectable class of the community. A publication is defamatory when it tends to injure one's reputation in the community and to expose him to hatred, ridicule, and contempt, an imputation of crime or of bad character or an injury in one's office or business not being essential." *Muchnick* v. *Post Publishing Co.* 332 Mass. 304, 305–306. *Anthony* v. *Barss, supra,* 402. It is not required that there be direct and explicit language tending to discredit the plaintiff or imputing crime to him. "Words, pictures or signs, singly or in combination, understood as mankind in general would understand them, conveying such an imputation render the publication libelous. 'An insinuation may be as actionable as a direct statement.' " *Thayer* v. *Worcester Post Co.* 284 Mass. 160, 162. Moreover, reasonable men need not feel the plaintiff has been discredited if nonetheless a considerable and respectable class in the community do. *Ingalls* v. *Hastings & Sons Publishing Co.* 304 Mass. 31, 33.

We are of opinion that the presence of the plaintiff's picture in these circumstances is capable of a defamatory meaning. The defendant argues that a more likely mean-

ing was that Mr. Mabardi was to be, as was Wilcox, a witness before the Blatnik Committee. But the role of Wilcox in the proceedings was explained in the article. That of Mr. Mabardi was not. There was reference to an unnamed lawyer allegedly engaged in the solicitation of legal business. The inference could have been drawn by a large number of readers that the plaintiff was involved in the wrongdoing cited in the headline and discussed in the article. Such an inference was encouraged by the juxtaposition of the plaintiff's picture and that of Mirkin, the headline, and the story. It was not discouraged by any clarifying textual reference to the plaintiff. And while the inference may not be a necessarily rational one, we cannot say that a considerable segment of the community would not make it. We are not impressed with the defendant's argument that the insertion of Mr. Mabardi's picture should have been interpreted as a mistake. Where this publication is susceptible of both defamatory and harmless meanings, a jury should have the opportunity to decide in what sense the public did understand it. *Twombly* v. *Monroe,* 136 Mass. 464, 469. *Ingalls* v. *Hastings & Sons Publishing Co., supra,* 33. See *Express Publishing Co.* v. *Isensee,* 286 S. W. 926 (Tex. Civ. App.).

We conclude that the facts alleged in Mr. Mabardi's declaration entitle him to have his claim passed upon by a jury.

*Order sustaining demurrer reversed.*