MARIE BRAUER *vs.* THE GLOBE NEWSPAPER COMPANY
(and a companion case[1]).

Suffolk.    April 7, 1966. — June 7, 1966.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Libel and Slander.    Privacy.    Contract,* What constitutes.

In an action for libel by a normal boy against the proprietor of a news-
paper, publication in the newspaper of a photograph of a boy showing
a side view of him sitting bent over in apparent dejection, with his face
turned away and, with the exception of one ear and the partial outline
of the back of his head, his features and facial characteristics obliter-
ated, over a caption reading "Help for the Mentally Retarded," and
used to illustrate an article dealing with proposed health and welfare
legislation, was capable of being found to be defamatory of the plaintiff
when considered with allegations that the person appearing in the photo-
graph was the plaintiff and that "friends, relatives, and former neigh-
bors . . . recognized" him, even if one would not have been able to
determine that the photograph as published depicted the plaintiff un-
less one had been so informed by the circumstances of a publication of
the photograph in the newspaper more than two years before in connec-
tion with the newspaper's annual "Santa" appeal at Christmas for aid
for those in need.  [56–57]
A declaration in an action of contract alleging violation by the defendant
of an "understanding" that a certain photograph was to be used only in
connection with a series of articles published by the defendant, without
alleging any consideration for the understanding, was demurrable.
[57]
An action for an alleged invasion of the right of privacy, if such right
existed, based on "publicity" which cast the plaintiff "in a false light in
the public eye" through a publication in the defendant's newspaper of a
photograph of the plaintiff could not be maintained where the photo-
graph as published did not indicate to the public that it was one of the
plaintiff, even though a small group of neighbors, friends, and rela-
tives of the plaintiff, familiar with him and with the circumstances in
which the photograph had been taken, recognized him as the person
depicted therein.  [58]

CONTRACT OR TORT by Marie Brauer.   Writ in the Supe-
rior Court dated May 24, 1965.

TORT by Michael P. Brauer.   Writ in the Superior Court
dated May 24, 1965.

---

[1] The companion case is by Michael P. Brauer against the same defendant.

The actions were heard by *Kalus,* J., on demurrers.

*Arshag A. Mazmanian (Leonard Glazer* with him) for the plaintiffs.

*Robert J. Hallisey (Richard M. Harter* with him) for the defendant.

SPALDING, J. These are appeals from orders sustaining demurrers to the declarations in two actions, one in tort and the other in contract or tort.

The allegations common to both declarations are as follows. The plaintiff Michael P. Brauer is the seven year old son of the plaintiff Marie Brauer. Michael and his mother have resided together in Boston since Michael's birth in 1957. The defendant publishes the Boston Globe, a news- paper widely circulated in Boston and throughout the Commonwealth. Sometime in November of 1962, the defendant sent a reporter and a photographer to interview the plaintiffs at their home "relative to the unfortunate financial circumstances in which they found themselves with . . . Christmas . . . approaching." The interview was to be used in the defendant's "Globe Santa" articles, "an annual series appearing in the . . . [Globe] for several years prior to 1962, and in subsequent years to the present, designed to raise money and gifts for needy children and their families." Marie "consented to . . . [the] interview . . . provided that their actual names and addresses were not used." The defendant's representative then photographed Michael "in a posed position . . . permission being granted by . . . [his] mother with the understanding that the photograph was to be used only in connection with the said . . . series." A few weeks later an entire page of photographs, including the one taken of Michael, appeared in the Globe. "[N]eighbors of . . . [Marie] and her family were aware of the . . . interview and of the photograph being taken and were able to recognize . . . [its] subject . . . as being" Michael. Subsequently, Marie's friends and relatives "were made aware" that the photograph was of Michael.

On April 2, 1965 (more than two years later), the same photograph was published in the Globe, over a caption

which read: "Help for the Mentally Retarded." It was "apparently used to illustrate an article . . . dealing with health and welfare legislation . . . [proposed] by the Governor of the Commonwealth . . .." The plaintiffs' other allegations charge that this publication of the photograph was made falsely and maliciously, without authorization of either plaintiff, and "in violation of the terms of the permission granted" by Marie at the time it was taken; "that the defendant failed to exercise due diligence to determine whether or not the subject of the photograph . . . was mentally retarded and that . . . [this] failure . . . was reckless; that the defendant knew, or ought to have known, that the inference to be drawn from the . . . use of the photograph and the accompanying article . . . is that the subject of said photograph is mentally retarded."

Affixed to the plaintiffs' declarations are photostatic copies of the print which appeared in the Globe on both occasions. The photograph is a side view of a six to nine year old boy sitting bent over on a stairway in apparent dejection. His face is turned and, with the exception of one ear and the partial outline of the back of his head, none of his features or facial characteristics is visible. It appears that these areas were purposely obliterated by the publisher.

Michael's declaration contains three counts. Count 1 alleges that the defendant's second publication of the picture was defamatory. "A demurrer to a declaration for libel is not to be sustained unless the words cannot be reasonably understood in a defamatory sense, or, to express it in another way, unless they are incapable of a defamatory meaning. The test is whether, in the circumstances, the writing discredits the plaintiff in the minds of any considerable and respectable class of the community. A publication is defamatory when it tends to injure one's reputation in the community and to expose him to hatred, ridicule, and contempt, an imputation of crime or of bad character or an injury in one's office or business not being essential." *Muchnick* v. *Post Publishing Co.* 332 Mass. 304, 305–306,

and cases there cited. *Mabardi* v. *Boston Herald-Traveler Corp.* 347 Mass. 411, 413.

The defendant does not contend that the false imputation that a person is mentally retarded does not fall within this definition of a defamatory statement. It does argue, however, that since Michael's identifying characteristics are obscured in the photograph, nothing defamatory was said of and concerning him. See *McCallum* v. *Lambie,* 145 Mass. 234; *Hanson* v. *Globe Newspaper Co.* 159 Mass. 293. Compare *Louka* v. *Park Entertainments, Inc.* 294 Mass. 268, 271. Since for the purposes of these appeals the defendant is bound by the allegation that Michael is the person appearing in this photograph, we assume its real contention to be that the declaration is demurrable because no one who had not been otherwise informed of the facts relating to the photograph's first publication could determine that it depicts Michael.

This argument is unsound. There is no requirement in an action of libel "that the defamatory matter be communicated to a large or even substantial group of persons. It is enough that it is communicated to a single individual other than the one defamed." Restatement: Torts, § 577. See *Bigelow* v. *Sprague,* 140 Mass. 425, 426–427; *Rumney* v. *Worthley,* 186 Mass. 144; *Bander* v. *Metropolitan Life Ins. Co.* 313 Mass. 337, 349; Prosser, Torts (3d ed.) § 108. And if the person is not referred to by name or in such manner as to be readily identifiable from the descriptive matter in the publication, extrinsic facts must be alleged and proved showing that a third person other than the person libeled understood it to refer to him. *Golden No. Airways, Inc.* v. *Tanana Publishing Co.* 218 F. 2d 612, 622 (9th Cir.), and cases cited. "It is enough that it is so understood even though he is so inaccurately described that it is extraordinary that the communication is correctly understood." Restatement: Torts, § 564, comment a. See 33 Am. Jur., Libel and Slander, § 89, p. 102. Michael's declaration alleges that "friends, relatives and former neighbors . . . recognized . . . the plaintiff" in the photograph's second

publication, and we cannot on demurrer say, particularly in light of the circumstances of the first publication, that they could not have done so. The demurrer to this count should have been overruled.

Michael's second count is predicated on the existence of an agreement between Marie and the defendant regarding the use to which the photograph might be put. Laying to one side the question whether a right of action could accrue to Michael under such an agreement, the declaration speaks only of an "understanding that the photograph was to be used only in connection with the . . . Globe Santa series." The plaintiff cites no authority — and we are aware of none — standing for the proposition that an implied limitation in the terms of a consent to the use of a photograph will, without consideration, support an action of contract.

Michael's third count is based upon an alleged invasion of his right of privacy. As yet, no case has determined that there exists in this Commonwealth a legally protected right of privacy. See *Themo* v. *New England Newspaper Publishing Co.* 306 Mass. 54, 58; *Kelley* v. *Post Publishing Co.* 327 Mass. 275; *Frick* v. *Boyd,* 350 Mass. 259. However, while carefully preserving the question whether such a right exists, these decisions have set forth some of the boundaries within which the right, if recognized, would be actionable.

The plaintiff has sought to bring his case within a group of decisions from other jurisdictions which are now generally recognized as holding that "[p]ublicity which places the plaintiff in a false light in the public eye" is actionable as an invasion of his right of privacy.[2] These decisions have held that this right was invaded where the photograph of a taxicab driver was used to illustrate an article on the propensity of such drivers to cheat their customers (*Peay* v. *Curtis Publishing Co.* 78 F. Supp. 305 [D. D. C.]); where

---

[2] See Prosser, Privacy, 48 Cal. L. Rev. 383, 389, where the author attempts to classify into four general categories the myriad sets of circumstances in which rights of privacy have been held to have been violated. See also Wade, Defamation and the Right of Privacy, 15 Vanderbilt L. Rev. 1093; Note, 50 Cal. L. Rev. 357.

a photograph of a child taken at the scene of an accident in which she was struck by a car was used to illustrate an article on the negligence of pedestrians entitled, "They Ask to be Killed" (*Leverton* v. *Curtis Publishing Co.* 192 F. 2d 974 [3d Cir.]); and where a photograph of some youths living in a slum area was published in connection with an article on juvenile delinquency (*Metzger* v. *Dell Publishing Co.* 207 Misc. [N. Y.] 182). But for the fact that Michael is not identifiable from the photograph or from the accompanying articles, his case would be indistinguishable from those cited. It seems to us, however, that an invasion of privacy based on "publicity" which casts the plaintiff "in a false light in the public eye" requires acts which are sufficient in themselves to familiarize the public with either the name, likeness, or other means of identifying the plaintiff. The declaration does allege, in this regard, that neighbors, friends, and family recognized the photograph as that taken of Michael and as that first appearing in the Globe Santa series. However, this recognition by a small group of intimates, familiar not only with the subject but with the circumstances under which the photograph was taken, falls short of the kind of publicity upon which an action for the invasion of privacy, if acknowledged to exist, would have to be based.

For this same reason the demurrer to Marie's declaration, also based on an invasion of privacy, was rightly sustained. We might note, moreover, that our decision in *Kelley* v. *Post Publishing Co.* 327 Mass. 275, 278, casts serious doubt upon the proposition that a cause of action may accrue to anyone other than the immediate victim of an invasion of privacy.

The order sustaining the demurrer in the action brought by Marie is affirmed. In the action brought by the minor plaintiff the order sustaining the demurrer on the first count is reversed; on the second and third counts it is affirmed.

*So ordered.*