# United States Court of Appeals

## For the First Circuit

No. 04-1449

AMRAK PRODUCTIONS, INC.; JAMES ALBRIGHT,

Plaintiffs, Appellants,

v.

ANDREW MORTON; MICHAEL O'MARA;
MICHAEL O'MARA BOOKS LIMITED, ST. MARTIN'S PRESS, INC.;
and TIME, INC.

Defendants, Appellees,

NEWS GROUP NEWSPAPERS, LTD.,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella and Howard, Circuit Judges.

Jerrold G. Neeff, with whom The Bostonian Law Group, was on
brief, for appellants.
Jonathan M. Albano, with whom Aaron M. Wais, and Bingham
MCCutchen LLP, were on brief, for appellees.

June 3, 2005

**TORRUELLA**, **Circuit Judge**. Plaintiffs-appellants James Albright, a former bodyguard and lover of Madonna, and his corporate agent, Amrak Productions, Inc. ("Amrak"), appeal from the dismissal of their defamation, invasion of privacy, and other state claims stemming from the publication of a tell-all book, Madonna. In a nutshell, defendants-appellees author and publishers allegedly portrayed Albright as a homosexual by miscaptioning a picture of a homosexual individual with Albright's name in a book and magazines. The district court dismissed appellants' claims, finding that for the "photograph [to] make[] any kind of statement regarding Albright's sexuality requires the Court to pile inference upon innuendo, innuendo upon stereotype." Albright v. Morton, 321 F. Supp. 2d 130, 132 (D. Mass. 2004). The court also applied recent Federal and State Supreme Court decisions on homosexuality to hold that a statement identifying an individual as homosexual is not defamatory per se under Massachusetts law. Appellants argue otherwise, stating that continued societal and governmental acceptance of various forms of discrimination against homosexuals should lead to a presumption of injury. We affirm the dismissals, albeit on more limited grounds than the district court's holding.

## I.  Background

Amrak employed Albright -- who has been involved in the personal and professional security business for over ten years -- as a professional bodyguard. From January to July 1992, Albright

-2-

served as Madonna's bodyguard, during which time he became romantically involved with the artist and remained so until 1994.

In December 2000, Albright entered into a contract with O'Mara Books to sell information about Madonna for an upcoming biography. The book, entitled Madonna, was written by author Andrew Morton and published by O'Mara Books in the United Kingdom and by St. Martin's Press in the United States in 2001. Chapter 11 of the book details Albright's relationship with Madonna. Andrew Morton, Madonna 175-91 (St. Martin's Press) (2001).

The book also contains forty-eight pages of photographs, including one in which Madonna is accompanied by two men. The man to the left is wearing black pants, a black and white shirt, a black leather jacket, tinted sunglasses, a string necklace, and an earring. The caption states:

> Madonna attends ex-lover Prince's concert with her secret lover and one-time bodyguard Jimmy Albright (left). Albright, who bears an uncanny resemblance to Carlos León, the father of Madonna's daughter, enjoyed a stormy three-year relationship with the star. They planned to marry, and had even chosen names for their children.

This photograph allegedly defamed Albright because the man pictured was, in fact, José Guitierez, an "outspoken homosexual" who "often dressed as a woman," and engaged in what appellants describe as "homosexual, sexually graphic, lewd, lascivious, offensive, and possibly illegal" conduct. Guitierez was employed as one of Madonna's dancers.

-3-

On November 12, 2001, *People* magazine, a publication of Time Inc., published the same photograph along with the erroneous caption. *News of the World*, a publication of News Group Newspapers, Ltd., published the same on March 17, 2002.

Appellants subsequently brought a diversity suit against Morton, Michael O'Mara Books, Michael O'Mara, St. Martin's Press, Time Inc., and News Group Newspapers, Ltd., in the District of Massachusetts. Specifically, appellants sued for defamation, invasion of privacy, negligence, negligent and intentional infliction of emotional distress, along with violations of state statutory prohibitions on unfair trade practices, Mass. Gen. Laws ch. 214, § 3A (2005) and ch. 93A, and unauthorized commercial use of a name or likeness, id. at ch. 214, § 3A.

On May 28, 2004, the district court granted appellees' motion to dismiss on all counts. First, the court held that no reasonable view of the photograph and text would suggest that Albright is homosexual, and thus the publication cannot be construed as defamatory. Alternatively, the court held that imputing homosexuality cannot be considered defamatory per se in Massachusetts, particularly given the rationales in the U.S. Supreme Court's decision in Lawrence v. Texas, 539 U.S. 558 (2003) (invalidating state statute criminalizing same-sex sexual conduct), as well as the Supreme Judicial Court's decision in Goodridge v. Dep't of Pub. Health, 798 N.E.2d 941 (Mass. 2003) (invalidating

-4-

limitations to civil marriage for same-sex couples under state equal protection principles).  Given appellants' failure to state a defamation claim, the court dismissed the derivative claims of commercial use, false light invasion of privacy, emotional distress, negligence, and unfair trade practices.  This appeal follows.

## II.  **Analysis**

### A.  **Defamation**

Appellants first argue that they have met the pleading requirements necessary to survive a motion to dismiss a defamation claim.  Despite our <u>de novo</u> review of the dismissals -- accepting all factual allegations in the complaint as true and drawing all reasonable inferences favorable to the appellant, <u>see</u> <u>Barrington Cove Ltd. P'ship</u> v. <u>Rhode Island Housing and Mortg. Fin. Corp.</u>, 246 F.3d 1, 4-5 (1st Cir. 2001) -- we disagree.

To prevail in a defamation claim, plaintiffs must establish that "defendant[s] w[ere] at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss." <u>White</u> v. <u>Blue Cross & Blue Shield of Mass., Inc.</u>, 809 N.E.2d 1034, 1036 (Mass. 2004) (footnote omitted).  A court may dismiss written defamation claims, <u>i.e.</u>, libel claims, if the communication is "incapable of a defamatory meaning."  <u>Brauer</u> v. <u>Globe Newspaper</u>

-5-

Co., 217 N.E.2d 736, 738 (Mass. 1966) (quoting Muchnick v. Post Publ'g Co., 125 N.E.2d 137, 138 (Mass. 1955). This threshold question, "whether a communication is reasonably susceptible of a defamatory meaning, is a question of law for the court." Phelan v. May Dept. Stores Co., 819 N.E.2d 550, 554 (Mass. 2004).

A communication is susceptible to defamatory meaning if it "would tend to hold the plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community." Id. at 553 (quoting Stone v. Essex County Newspapers, Inc., 330 N.E.2d 161, 165 (Mass. 1975)). The communication "must be interpreted reasonably," leading a "reasonable reader" to conclude that it conveyed a defamatory meaning. Foley v. Lowell Sun Publ'g Co., 533 N.E.2d 196, 197 (Mass. 1989) (internal quotation marks omitted). Context matters in assessing such claims: "The court [must] examine the statement in its totality in the context in which it was uttered or published. The court must consider all the words used, not merely a particular phrase or sentence." Id. (quoting Myers v. Boston Magazine Co., 403 N.E.2d 376, 379 (Mass. 1980)). The Massachusetts Supreme Judicial Court, for example, has required that allegedly defamatory photographs or headlines be interpreted in light of the entire context of the publication -- i.e., the entire text of the article -- to survive dismissal. Compare Mabardi v. Boston Herald-Traveler Corp., 198 N.E.2d 304, 306 (Mass. 1964) (holding that

plaintiff stated a claim for defamation where implications from the juxtaposition of plaintiff's photo with the article "was not discouraged by any clarifying textual reference to the plaintiff"), with Foley, 533 N.E.2d at 197 (affirming dismissal of defamation claim where text of article accompanying the contested headline made clear that plaintiff had been arrested, not convicted, for assault). See generally Lambert v. Providence Journal Co., 508 F.2d 656, 658 (1st Cir. 1975) ("reading the [challenged] articles in their entirety" to determine whether they were reasonably capable of any defamatory meaning).

The miscaptioned photograph in the instant case is not reasonably susceptible of a defamatory meaning. Nothing in Guitierez's appearance, particularly given the accompanying caption stressing Albright's heterosexuality (e.g., Madonna's "secret lover"), gives any indication that Albright is homosexual. To draw such an inference, the reader -- who would have to view homosexuals with "scorn, hatred, ridicule or contempt," Phelan, 819 N.E.2d at 553 -- must follow Madonna and her cohort closely enough to recognize Guitierez as a gay man, but not closely enough to know Guitierez's name or what Albright looks like. Few, if any, readers would fall into this "considerable and respectable segment in the community." Id.

The context of the text accompanying the photograph further deflates any argument that the photo conveys a defamatory

-7-

meaning. When we "consider all the words used" in the accompanying text, <u>Foley</u>, 553 N.E.2d at 197 -- including phrases such as Albright's "long-time girlfriend," his "hot and heavy" affair with Madonna, their sexual encounters, and Albright's "fling" with a "girl at a club" -- we find that no reasonable reader could conclude that Albright is homosexual. This conclusion is supported by the caption, which states that Albright was Madonna's "secret lover," that they "enjoyed a stormy three-year relationship," and that they planned to marry and "had even chosen names for their children." Similarly, the caption for the <u>People Weekly</u> photograph states that Albright felt "overwhelming love" for Madonna, with the accompanying article detailing their relationship.

Given appellants' failure to satisfy the threshold question of defamatory meaning, we affirm the court's dismissal of the defamation claim. Moreover, given the court's correct finding that the photograph and its caption make no imputation of homosexuality, we need not decide whether such an imputation constitutes defamation <u>per se</u> in Massachusetts.

**B. Derivative Claims**

We have considered appellants' derivative claims -- commercial use, negligent and intentional infliction of emotional distress, and Chapter 93A -- and find them all without merit. We likewise reject appellants' urging that the false light invasion of privacy claim should be recognized in Massachusetts, particularly

given the state court's repeated refusal to do so.  See, e.g., ELM Med. Lab., Inc. v. RKO Gen., Inc., 532 N.E.2d 675, 691 (Mass. 1989); Jones v. Taibbi, 512 N.E.2d 260, 270 n.12 (Mass. 1987); Fox Tree v. Harte-Hanks Communications, Inc., 501 N.E.2d 519, 522 (Mass. 1986).  The district court's judgments are affirmed.

**<u>Affirmed</u>**.