MacDonald, D. Lloyd, J.
Before the Court in this defamation case are two motions of the defendants for summary judgment, one as to liability generally and the second for partial relief as to the issue of the status of the plaintiff Charles Mazetis (“plaintiff’ or “Mazetis”) as a public official. Mazetis is a court officer. The question of the plaintiffs “public official” status must be addressed because under New York Times Co. v. Sullivan, 376 U.S. 254, 279-83 (1964), the First Amendment requires that “actual malice” be proved if the subject of the alleged defamation is a public official. For the reasons that follow, the defendants motion for partial summary judgment is ALLOWED. Their motion of summaiyjudgment as to liability is DENIED.
*381 Pertinent Facts
The plaintiff is a court officer in the Bristol County Superior Court. The defendant Terence Downing (“Downing”) is a reporter employed by the defendant Enterprise Publishing Company (“Enterprise”). Enterprise publishes the daily newspaper, The Enterprise, in the Brockton area, and Downing reported for the paper.
The case arises from an article written by Downing and published in the January 14, 2004 edition of The Enterprise. The setting of the article was a press conference held outside of the Taunton Superior Courthouse on January 13, 2004. The purpose of the press conference was to announce the settlement of an action brought against the Trial Court of the Commonwealth alleging violations of the federal Americans with Disabilities Act (the “ADA”) at various Bristol County court facilities. A principal plaintiff in the action was Attorney Joseph deMello (“deMello”) of Taunton. DeMello is disabled. The terms of the settlement were favorable to the plaintiffs in that the Commonwealth committed to making substantial capital improvements to permit ease of access to disabled persons, such as deMello.
DeMello participated in the press conference. He was driven there by his wife in a van. Mrs. deMello parked the van first in a space reserved for the Clerk Magistrate. Included in Mazetis’s duties as a court officer was to oversee reserved spaces in the courthouse parking lot. He did not object to Mrs. deMello parking in the clerk’s space initially because the clerk was away for lunch. However, Mazetis asked her to move her vehicle near the end of the lunch hour. It was what occurred thereafter as she moved her vehicle to a space reserved for handicapped persons and the interactions incident to it which formed the subject matter of Downing’s article and its alleged defamatory content.
Not knowing that Mrs. deMello had a handicap (HV) placard, Mazetis asked her to move the vehicle. She informed him that she was there to transport her handicapped husband. At that time Mazetis apparently saw the HV placard and permitted her to stay.
Simultaneously, deMello (in the company of Downing) was returning to the parking area upon the conclusion of the press conference. deMello observed (but did not hear) the exchange between his wife and Mazetis. Witnesses differ as to the details of the conversations, but there is agreement that deMello — concerned to find out what had transpired between his wife and Mazetis — tried to talk to Mazetis. However, Mazetis chose not to speak with him. In substance, Mazetis says that he was “confronted” by deMello.
As noted, Downing was with deMello at this time, having covered the press conference for The Enterprise. The plaintiff alleges that Downing was a longstanding personal friend of deMello. Downing, having observed deMello’s unsuccessful attempt to speak to deMello, approached Mazetis and informed him that deMello required his assistance. Not wishing to become further involved and not believing that deMello in fact needed his help, Mazetis returned to his post in the courthouse.
The next day The Enterprise carried a front page article authored by Downing, headlined, “Disabled Lawyers Get Cool Reception.” The focus of the article was not the settlement of the ADA lawsuit, but rather Mazetis’s conduct. The article led, “Attorney Joseph F. deMello thought his federal lawsuit would finally end the indignities he has endured trying to get into Bristol County courts, which are not handicapped accessible. But deMello and his wife, Theresa, found outThursday he thought wrong, even though he won a settlement this week that will make the court buildings accessible to eveiybody.”
Downing’s piece went on to state that after Mazetis had asked Mrs. deMello to move the vehicle from the handicapped area, “she tried to explain the situation to the officer, but the officer refused to listen, abruptly turned his back and walked away. The court officer then ignored Joseph deMello when the lawyer tried to seek assistance from him... [T]he court officer turned his back on the attorney and continued to walk.”
Downing then described in the article his own role in asking Mazetis to assist deMello, “telling him that the lawyer was handicapped, but the officer again refused to acknowledge them, turned his back and went inside the building.”
The complaint alleges that the article was defamatory because of several overt falsehoods, among others, the statement that Mazetis had refused to assist deMello, and, more broadly that Downing concocted a confrontational scene where Mazetis — as an officer of the court — deliberately refused to provide the disabled deMello with necessary assistance to use the facilities of the courthouse. As stated in the plaintiffs memorandum in opposition to the defendants’ summary judgment motion:
From its headline and on, the article is replete with words like, “cool reception,” “indignities,” “ordered,” “refused,” “turned his back,” “insensitive,” “unprofessional,” and others of the like. The collective impact of the story that Downing reported and The Enterprise [published] is unmistakable: Mazetis was not only deliberately derelict in his public and moral duties to the disabled, but also an imperious, insensitive and bad person, subject to ridicule and contempt for foisting an “indignity” upon a handicapped individual.
The defendants state that there was no material falsehood in the story because Mazetis admits that deMello asked for his assistance (albeit as to the parking issue, not for physical assistance). The defendants submit that any other statements alleged by the *382 plaintiff to be defamatory were “nothing but opinions based on the undisputed facts of what occurred.”
The defendants further deny that there is any reasonable basis for a finding of negligence since the article was based on the first-hand observations of a reporter under circumstances “devoid of any evidence that the defendants knew the article was false or had any doubts as to its accuracy."
Discussion
To prevail on a defamation claim the plaintiff must prove: (1) the defendants published non-privileged, false statements of fact about him; (2) the statements, reasonably construed were defamatory; (3) defendants published the defamatory statements negligently (if the plaintiff is a private figure) or with actual malice (if plaintiff is a public figure), and (4) the statements caused the plaintiff to suffer actual injury. See Joseph R. Nolan and Laurie J. Sartorio, Tort Law §§7.1-7.9, at 163-88 (3rd ed. 2006).
“The test [as to defamation] is whether, in the circumstances, the writing discredits the plaintiff in the minds of any considerable and respectable class of the community. A publication is defamatory when it tends to injure one’s reputation in the community and to expose him to hatred, ridicule, and contempt, an imputation of crime or of bad character or an injury in one’s office or business not being essential.” Brauer v. Globe Newspaper Co., 351 Mass. 53, 55 (1966), quoting Muchnick v. Post Publishing Co., 332 Mass. 304, 305-06 (1955).
The subject of the defendants’ motion for partial summary judgment and thus a necessary preliminary question to address is whether as a court officer Mazetis, in the context of the statements at issue, was a public figure and thus held to the higher standard of having to prove actual malice. The issue is one for the Court to decide. “In the absence of disputed material facts, the question whether a person is a public official is one of law...” Lane v. MPG Newspapers, 438 Mass. 476, 479 (2003).
Plaintiffs Public Official Status
Neither the SJC nor the Appeals Court has ruled on the question of the status of court officers as public officials. However, concrete guidance has been provided by both courts.[1] In finding that all police officers — from patrolmen to senior officers — are public officials, the SJC (Ireland, J.) capsuled the controlling principles in these terms:
Recognizing the “profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open” and acknowledging that the Constitution protects such debate even when it includes “vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials,” the landmark case, New York Times Co. v. Sullivan, 376 U.S. 254, 270-71, 279-80 (1964), established that a public official could not recover for “a defamatoiy falsehood relating to his official conduct unless he proves that the statement was made with ‘actual malice’ — that is, with knowledge that it was false or with reckless disregard of whether it was false or not.”
Rotkiewicz v. Sadowsky, Mass. 748, 752 (2000). See also Netherwood v. AFSCME, Local 1725, 53 Mass.App.Ct. 11, 16 (2001).
The substance of these principles was reaffirmed by the SJC in Lane, supra. In concluding there that even an uncompensated elected town meeting member was a public official and thus subject to the requirement of proof of actual malice, the Court observed: “While we agree that the limited responsibilities of an elected town meeting representative may place that position at the far end of a continuum of elected public officials from that of the President of the United States, the principle of ’’uninhibited, robust, and wide-open" public debate regarding the conduct of those we elect to govern applies equally to both," citing New York Times Co. v. Sullivan, supra at 270.
The SJC in Rotkiewicz enumerated several factors to be considered in determining public official status:
Whether the employee’s position in government “has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general interest in the qualifications and performance of all government employees ...”
“The employee’s position must be one which could invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy."
The “government employee’s ability to set policy guidelines that are of importance to public debate.”
“(T]he impact of the government position on everyday life.”
“(Tjhe potential for social harm from abuse of the government position.”
“The employee’s access to the press.”
Rotkiewicz at 753.
The record before the Court discloses that a court officer such as the plaintiff is appointed by the Chief Judge for Administration and Management. Based on his seniority and level of experience, Mazetis inhabits the position of Court Officer II. He is senior to those who hold the title of “Court Officer.” In the Taunton Superior Court where he is assigned, he is subordinate only to the Chief and the Assistant Chief Court Officers.
Pursuant to G.L.c. 221, §70, court officers have police powers, although they are limited to the premises and immediate environs of the courts to which they are assigned. They are also statutorily authorized *383 to attend the sessions of the court, preserve order, provide security and serve various orders and processes of the court. G.L.c. 21 IB, §9A.
According to the Trial Court’s “Job Description and Qualifications for Court Officer” document, a court officer like the plaintiff is responsible for “maintaining order [on the court premises and] protecting judges, jurors, prisoners, court personnel and the public . . .” The plaintiffs own description of his duties was similar. At his deposition he testified that he was responsible for keeping order during trials, handling prisoners and attending to witnesses and juror deliberations.
So described, the function and responsibilities of the plaintiff are consistent with this Court’s observations and experience. Thus, inasmuch as the “matters [are ones] that the [Court] knows because of his judicial function,” Paul J. Liacos, Handbook of Massachusetts Evidence 21-22 (7th ed. 1999), they are appropriate for judicial notice.
Applying the above principles (but aware that in doing so the Court is engaged in a “daunting task," Mandel, supra at 202), I conclude that Mazetis was a public official for defamation purposes. If, as the SJC has held, that any police officer and that any town meeting member, is a public official, then a court officer is certainly who in the course of the performance of his public duties is the subject of a critical newspaper stoiy as to his compliance with the letter and spirit of the federal and state laws forbidding discrimination against and requiring affirmative accommodation of handicapped persons.
When a court officer such as the plaintiff interacts with the public and members of the bar on the grounds of or in the interior of a courthouse, he or she is the face of the court as an institution. And when such an officer’s conduct is examined to determine whether he or she has been faithful to the officer’s duty to comply with and enforce the law of the Commonwealth on a subject as sensitive as that which pertains to the accommodation of disabled persons, there is a compelling public interest that a journalist’s mandate in reporting such events “be uninhibited, robust, and wide-open.” Rotkiewicz, 431 Mass. at 752. And this is so even if “vehement, caustic, and sometimes unpleasantly sharp attacks [result].” Id.
Thus, the plaintiff as a public official may prevail only if he proves that Downing and The Enterprise acted with malice.
Sufficiency of the evidence as to actual malice
Summary judgment is appropriate where there are no material facts in dispute and the moving party is entitled tojudgment as amatter of law. See Community Nat. Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). Here, the defendants as the moving party bear the burden of demonstrating the absence of a triable factual issue and its entitlement to a judgment. See Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
Because Mazetis as plaintiff would have the burden of proof at trial, the defendants can meet their burden at the summary judgment either by submitting evidence that negates an essential element of the plaintiffs case or “by demonstrating that proof of an element is unlikely to be forthcoming at trial.” Flesner v. Technical Comm. Corp., 410 Mass. 805, 809 (1991). The defendants may also show that Mazetis has “no reasonable expectation of proving an essential element of [his] case.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
The test whether a publication is defamatory is whether, in the circumstances, the writing discredits the plaintiff “in the minds of any considerable and respectable segment in the communily.” Tropeano v. Atlantic Monthly Co., 379 Mass. 745, 751 (1980), quoting Stone v. Essex County Newspapers, Inc., 367 Mass. 849 (1975)." Draghetti v. Chmielewski, 416 Mass. 808, 811 (1994) (Abrams, J.). “The saliently common attribute [of defamation in libel and slander contexts] is the publication of the defamatory material which invades the interest of the plaintiff in his reputation in the community.” Nolan and Sartorio, supra at §7.1, at 164.
“[AJctual malice means that the ‘defamatory falsehood was published with knowledge that it was false or reckless disregard of whether it was false.’ ” Rotkiewicz, supra at 755, quoting Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 867 (1975).
As noted above, certain representations in Downing’s article were not factually accurate. The plaintiff submits that they were intentionally untrue and written for the ulterior purpose of ridiculing him and holding him up to contempt in the community’s eyes.
The plaintiff has produced evidence of Downing’s longstanding personal friendship with deMello, which, in combination with other evidence, could support a reasonable inference that his story as to what happened in the parking lot of the Taunton court was not objective. The jury could reasonably conclude that, in fact, Mazetis never “turned his back” on either of the deMellos; that he never ignored a request from deMello for physical “assistance” and that he never “refused to listen” to Mrs. deMello’s explanation of her use of the handicapped space. And on the evidence in the summary judgment record a jury could reasonably find that in writing the story the way that he did, Downing knew that he was falsely painting Mazetis as callously insensitive to the needs of a disabled attorney. The jury could also reasonably conclude that, as depicted in Downing’s story, Mazetis violated federal and state law prohibiting discrimination against the disabled. Such a finding would necessarily include the judgment that Mazetis breached his duty as a court officer.
*384 Such findings would support a defamation verdict for the plaintiff on the basis of the principles earlier recited. Because of that this Court is unable to conclude as a matter of law that Mazetis has “no reasonable expectation of proving an essential element of [his] case.” Kourouvacilis v. General Motors Corp., 410 Mass. at 716. Accordingly, the defendants’ motion for summary judgment on liability fails.
ORDER
The defendants’ motion for partial summaiy judgment on the issue of the plaintiffs status as a public official is ALLOWED. The defendants’ motion for summary judgment is as to the entirely of the plaintiffs claim is DENIED.

Nevertheless, the lines are not bright. ‘The public-official classification eludes precise definition . . . Moving from the general to the specific ... is a daunting task; it is difficult to tell ‘how far down into the lower ranks of government employees’ the public-official designation extends.” Mandell v. The Boston Phoenix, 456 F.3rd 198, 202 (1st Cir. 2006), quoting New York Times v. Sullivan, supra at 283, n.23.