Rup, Mary-Lou, J.
The plaintiff, Marie Lucien (Lucien) brought this action against James Conlee (Conlee), Andre Ravenelle (Ravenelle), the Fitchburg School Department (School Department), Lois Mason (Mason), and the Fitchburg Teachers’ Association (Teachers’ Association). Conlee, Ravenelle and the School Department have moved for summary judgment.[2],[3] As against them, Lucien makes the following claims: Counts I and II allege discrimination by Con-lee, Ravenelle and the School Department, in violation of G.L.c. 15IB, §4; Counts III and IV allege breaches of contract by the School Department; Count V alleges slander by Conlee. *
BACKGROUND
A summary of the relevant facts are taken from the summary judgment record, viewed in the light most favorable to the nonmoving party. See Attorney Gen. v. Bailey, 386 Mass. 367, 371 (1982).
Lucien is of Haitian decent. The School Department has employed her for many years as a teacher. Beginning in 1996, Lucien was assigned to what would later become known as the Academy Middle School, where she remained until she was transferred to the Fitch-burg High School for the 2005-2006 academic year. Lucien does not have a history of disciplinary action at work and no evidence suggests that she does not perform her job at a satisfactory level.
In her complaint, Lucien alleges numerous instances of racial discrimination during her employment with the School Department. Sometime prior to August of 2003, she complained about the alleged discrimination to school administration officials and hired an attorney to represent her. On August 26, 2003, Lucien and her attorney met with school officials to discuss her alleged discriminatory treatment. According to Lucien, the parties reached an agreement that the principal and the School Department would take remedial action to address her allegations of discrimination.[4]
Thereafter, during the fall of2004, Lucien met with Conlee, the Academy Middle School’s principal. During that meeting, Conlee allegedly stated: “You do not behave like other minorities in the system.” Lucien alleges that during a meeting in July of 2005, Conlee inquired about her personal and family background by asking stereotypical race-based questions.
Lucien’s transfer to the Fitchburg High School followed the School Department’s comprehensive reorganization of its middle schools. During a faculty meeting conducted at the end of the 2004-2005 school year and related to the reorganization, Conlee instructed teachers to turn in their keys on the last day of school and that an administrator would check all materials taken from the school building by transferring teachers.[5] On August 12, 2005, Lucien attended a seminar at the Academy Middle School, following which she began packing personal items from her old classroom. A custodian observed and reported her actions to Conlee, who shortly thereafter made an announcement over the school’s public address system reminding teachers that, according to school policy, they would be subject to an administrative search prior to leaving the school. Conlee then asked his administrative assistant to retrieve Lucien’s keys. The assistant made an immediate announcement summoning Lucien to Conlee’s office. A subsequent search of Lucien and her vehicle turned up no school property.
On August 12, 2005, Lucien filed a complaint with the Teachers’ Association complaining about Conlee’s conduct. Concerned that Conlee had effectively imposed a new condition of employment, the Teachers’ Association filed a grievance. Ravenelle, the school superintendent, responded by letter to the grievance. Lucien alleges Ravenelle’s letter was discriminatory in nature. At a meeting scheduled thereafter to address *82 the grievance, Ravenelle arrived late. Lucien alleges the meeting was hurried and that Ravenelle acted in a condescending manner toward her.
On or about June 5, 2006, Lucien filed a complaint against Conlee and the School Department with the Massachusetts Commission Against Discrimination (MCAD).
DISCUSSION
A motion for summary judgment is granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the record entitles the party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17(1989). Apartywho does not bear the burden of proof at trial may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of the case at trial. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991). Once the moving party “establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue • of material fact.” Pederson, 404 Mass. at 17. The nonmoving party cannot defeat a motion for summary judgment by resting on the pleadings and mere assertions of disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). In deciding motions for summary judgment, the court may consider pleadings, deposition transcripts, answers to interrogatories, admissions on file, and affidavits. Mass.R.Civ.P. 56(c). The court reviews the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibility, or find facts. Attorney Gen., 386 Mass. at 370-71 (1982).
I. Violations of G.L.c. 151B, §4 (Counts I and II)
It is “an unlawful practice ... for an employer, by himself or his agent, because of the race ... of any individual... to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based on a bona fide occupational qualification.” G.L.c. 15IB, §4. To prevail on a discrimination claim pursuant to G.L.c. 15 IB, a plaintiff must prove: (1) membership in a protected class; (2) that she suffered harm; (3) discriminatoiy animus; and (4) causation. Sullivan v. Liberty Mut Ins. Co., 444 Mass. 34, 39 (2005).
A. Discrimination Claims against Conlee (Count I)
Lucien alleges that Conlee violated G.L.c. 15 IB, §4, by discriminating against her in the fall of 2004, July of 2005, and on August 12, 2005. In moving for summary judgment, Conlee asserts that Lucien’s pre-August 12, 2005 discrimination claims are time-barred and that she cannot prove the necessary elements of her discrimination claim.
1. Are claims time-barred?
As a precondition to filing a discrimination lawsuit pursuant to G.L.c. 15143, §9, the complaining party must first file a complaint with the MCAD within 300 days of the alleged act of discrimination. G.L.c. 151B, §5.
Because Lucien filed her complaint with the MCAD on or about June 5, 2006, her claims of discriminatory acts by Conlee in the fall of 2004 and July of 2005 are barred by the 300-day statute of limitations, see G.L.c. 15 IB, §4, unless found to be continuing violations. 804 Code Mass. Regs. §1.10(2). If Lucien “knew or reasonably should have known that her work situation was pervasively hostile and unlikely to improve,” she may not claim the benefit of the continuing violation doctrine. Cuddyer v. The Stop & Shop Supermarket Co., 434 Mass. 521, 539 (2001).
Even when viewing the evidence in the light most favorable to Lucien, it is clear that she had knowledge of her alleged pervasively hostile work situation. Before August 2003, she complained about the alleged discrimination to school administration officials and hired an attorney to represent her. Because she knew long before the fall of 2004 and July of 2005, of what she alleges was a discriminatory work environment she cannot claim the benefit of the continuing violation doctrine as to those incidents. See Cuddyer, 434 Mass, at 539.
2. Proof of the elements
With regard to her allegation that Conlee discriminated against her on August 12, 2005, she must prove the four necessary elements of a c. 15 IB claim. It is undisputed that, as a Haitian woman, she is a member of a protected class. A factual dispute exists as to whether the announcements and subsequent search of her person and vehicle caused Lucien to suffer harm as she alleges.
Because Lucien has offered no direct evidence of discriminatory animus, she must prove this element by “using the familiar three-stage, burden shifting paradigm first set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973) (McDonnell Douglas).” Sullivan, 444 Mass. at 39-40.
First, she must establish a prima facie case of race discrimination. Boston Pub. Health Comm’n v. Massachusetts Comm'n Against Discrimination, 67 Mass.App.Ct. 404, 407-08 (2006). She may do so by proving that: (1) she is a member of a protected class; (2) she performed her job at a satisfactory level; (3) she was subjected to an adverse employment action; and (4) other employees not a part of the protected class were not made to suffer the same adverse employment action. See id. Here, no factual disputes exist regarding Lucien’s membership in a protected class and her satisfactory job performance. At issue is whether she *83 can prove an adverse employment action not suffered by other non-protected class employees.
An adverse employment action occurs where a person is “disadvantaged in respect to salary, grade, or other objective terms and conditions of employment.” MacCormack v. Boston Edison, Co., 423 Mass. 652, 663 (1996). Because a new policy (particularly one not approved by the teachers’ union) requiring that teachers submit to searches of their persons and vehicles prior to leaving school property could be considered a disadvantageous change in employment conditions, a genuine issue of material fact exists as to whether Lucien was subjected to an adverse employment action. Because the parties dispute whether other teachers had their persons and vehicles searched prior to leaving the building, a genuine issue of material fact exists regarding whether employees not within Lucien’s protected class were subjected to the same adverse employment action. The existence of these triable issues makes summaiy judgment inappropriate as to so much of Count I as alleges that Conlee engaged in discriminatoiy conduct on August 12, 2005.
B. Discrimination Claims against Ravenelle and the School Department (Count II)
In Count II, Lucien alleges that Ravenelle and the School Department violated G.L.c. 151B, §4, by failing to properly investigate her complaint regarding Conlee and by inappropriately characterizing Conlee’s actions as permissible. During her deposition, Lucien also claimed that Ravenelle acted in a discriminatoiy manner: (1) in a letter responding to her grievance regarding Conlee, (2) by his late arrival at the meeting intended to address her grievance, and (3) by rushing through the meeting and acting in a condescending manner toward her. On their part, Ravenelle and the School Department claim that: (1) Ravenelle’s letter was not discriminatory, (2) being late and hurried does not indicate a discriminatory animus, and (3) Ravenelle was not condescending toward Lucien during the meeting.
To prevail on her discrimination claim, Lucien must prove discriminatoiy animus. See Sullivan, 444 Mass, at 39. Because she lacks direct evidence of discrimi-natoiy animus, she must use the three-stage McDonnell Douglas framework to prove this element. Id. at 39-40. As set forth above, she must establish a prima facie case of race discrimination by proving: (1) she is a member of a protected class; (2) she performed her job at a satisfactoiy level; (3) she was subjected to an adverse employment action; and (4) other employees not a part of the protected class were not made to suffer the same adverse employment action. Boston Pub. Health Comm’n, 67 Mass.App.Ct. at 407-08. Again, there is no dispute that she can prove her membership in a protected class and there is no evidence suggesting that she failed to perform her job at a satisfactoiy level.
An adverse employment action occurs where a person is “disadvantaged in respect to salaiy, grade, or other objective terms and conditions of employment.” MacCormack, 423 Mass, at 663. Here, Ravenelle’s and the School Department’s alleged inaction with respect to Conlee did not affect Lucien’s salaiy, grade, or terms of employment. She suffered an adverse employment action only if their inaction negatively affected her employment conditions. If a juiy believed the facts as alleged by Lucien, it could reasonably find that as a result of inaction by Ravenelle and the School Department, Lucien suffered further discrimination in the workplace, affecting her conditions of employment. Because the record fails to reveal how Ravenelle and the School Department treated other persons who filed grievances, there is also a genuine issue of material fact as to whether employees not within Lucieris protected class were made to suffer adverse employment action. Summary judgment as to Count II must be denied.
C. Breach of Contract Claims against the School Department (Counts III and IV)
In Count III of her complaint, Lucien alleges that the School Department breached a collective bargaining agreement with the Teachers’ Association, to which she was a beneficiaiy, by failing to acknowledge or take action to correct Conlee’s actions during the fall of 2004, July of 2005, and on August 12, 2005. In moving for summaiy judgment, the School Department argues that Lucien’s breach of contract claim fails because she cannot prove that Conlee discriminated against her, therefore the School Department had no responsibilily to take corrective action pursuant to the collective bargaining agreement. As discussed above, a genuine issue of material fact exists with regard to Lucien’s discrimination claim against Conlee. As a consequence, a material factual dispute exists regarding whether the School Department failed to act under the collective bargaining agreement.
In Count IV, Lucien alleges that during a meeting on August 26, 2003, the School Department agreed to take action to correct and end all the disparate treatment toward her. She alleges that the School Department’s failure to take any corrective actions constitutes a breach of contract. The School Department disputes that the parties ever entered into such an agreement. Whether or not an agreement existed between the parties is a material fact in Lucieris breach of contract claim because, without an agreement, there can be no breach. Determining the existence of an agreement would require a fact-finder to consider whether the parties agreed on the material terms of the alleged agreement and whether the parties intended to be bound by it. Situation Mgmt Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000). Where the intent of the parties is in issue, summaiy judgment is not appropriate. Flesner, 410 Mass, at 809.
*84 E. Slander Claim against Conlee (Count V)
Lucien bases her slander claim on the two announcements made over the school’s public address system on August 12, 2005. Conlee made the first announcement, reminding teachers not to remove items from the school and that they would be subject to an administrative search prior to leaving the building. Conlee’s administrative assistant made the second announcement after Conlee instructed her to retrieve Lucien’s keys. That announcement, given just minutes after Conlee’s, summoned Lucien to Conlee’s office. Lucien claims that, taken together, these two announcements were slanderous. In moving for summary judgment, Conlee asserts that Lucien has no chance of prevailing because she cannot prove that the spoken words were false and defamatory or that she suffered damages.
To make out a prima facie case for slander, a plaintiff must prove “publication of a false and defamatory statement by spoken words of and concerning the plaintiff.” Ellis v. Safety Ins. Co., 41 Mass.App.Ct. 630, 635 (1996). Where the words are not slanderous per se, the plaintiff must prove special damages. Lynch v. Lyons, 303 Mass. 116, 119-20 (1939).
Publication requires only that the statement be communicated to one other person. Ellis, 41 Mass.App.Ct. at 636. Here, Lucien has alleged that at least one other person was in the building at the time of the announcements. She has alleged sufficient facts to establish publication.
Words are defamatory “if they hold the plaintiff up to contempt, hatred, scorn, or ridicule or tend to impair [her] standing in the community.” Grande & Son, Inc. v. Chace, 333 Mass. 166, 168 (1955). Defamation may occur by innuendo. Reilly v. The Associated Press, 59 Mass.App.Ct. 764, 774 (2003). “An insinuation may be as actionable as a direct statement.” Id. at 776, quoting Mabardi v. Boston Herald-Traveler Corp., 347 Mass. 411, 413 (1964). The question of whether “innuendos were made and, if so, whether they were false,” is a question of fact. Reilly, 59 Mass.App.Ct. at 775. Here, the announcements were not, in and of themselves, false. However, when considered together, one hearing the announcements could conclude that Lucien was removing property from the school in violation of school policy. If those who heard the announcements drew that inference, they might label Lucien a rule breaker and a thief, which could subject her to contempt, hatred, scorn or ridicule and damage her reputation within the community. See Grande & Son, Inc., 333 Mass, at 168. Therefore, a factual dispute exists as to whether the announcements, taken together with fair inferences that might be drawn from them, constituted false and defamatoiy statements.
To prove that the statements were of and concerning the plaintiff, the plaintiff must prove that “the defendant was negligent in publishing words which reasonably could be interpreted to refer to the plaintiff.” New England Tractor-Trailer Training of Conn., Inc. v. Globe Newspaper Co., 395 Mass. 471, 479 (1985). Lucien argues that even though he had no information indicating that she was packing and intended to remove Academy Middle School supplies or equipment, Conlee allowed the second announcement to be made without considering the inferences that other people might draw or the impact that those inferences might have on her. As noted above, the two announcements came within minutes of each other and the second announcement was specifically directed to Lucien. As such, a reasonable juiy could And that persons hearing both announcements could reasonably infer that the first announcement referred to Lucien, insinuating that she was removing property or equipment in violation of school policy.
With regard to proof of special damages, see Lynch, 303 Mass, at 119-20, Lucien’s complaint alleges that, as a result of Conlee’s remarks, she suffered economic loss. Conlee disagrees and claims that her slander claim will inevitably fail because she will be unable to prove any economic loss. However, viewing the evidence in the light most favorable to Lucien, a reasonable juiy could find that Conlee’s statements caused her of suffer economic loss if she lost opportunities for professional advancement, as she alleges.
Because genuine issues of material fact exist, Conlee’s motion for summary judgment with regard to Count V must be denied.
ORDER
On the Defendants James Conlee, Andre Ravenelle, and the Fitchburg School Department’s Motion for Summary Judgment, it is hereby ordered as follows:
(1) As to so much of Count I as alleges discrimination by James Conlee prior to August 8, 2005, the motion is allowed.
(2) As to so much of Count I as alleges discrimination by James Conlee on or after August 8, 2005, the motion is denied.
(3) As to Counts II through V, the motion is denied.

In her opposition to the defendants’ motion for summary judgment, the plaintiff refers to the defendants’ motion as a motion to dismiss or in the alternative for summaiy judgment. However, the defendants’ motion is solely a Mass.R.Civ.P. 56 motion for summary judgment.

Mason and the Teachers’ Association filed a separate motion for summary judgment, citing grounds different from those raised by Conlee, Ravenelle and the School Department.

Editor’s Note: For a related opinion in this matter see 25 Mass. L. Rptr. 305, holding that it was not a violation of the Teacher’s Association’s duty of fair representation to refuse to prosecute the plaintiffs claim following the school department’s agreement to terminate the search policy and tendering an apology to the plaintiff.

Ivonne Perez was the principal at that time.

he stated purpose was to assure that transferring teachers would not take Academy Middle School equipment and supplies to their newly assigned schools.